[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14937

_____

D.C. Docket No. 1:07-cv-01276-KOB-TMP

MARCUS BERNARD WILLIAMS,

Petitioner-Appellant,

versus

STATE OF ALABAMA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 26, 2015)

Before MARCUS, WILSON and MARTIN, Circuit Judges.

MARTIN, Circuit Judge:

Marcus Bernard Williams, an Alabama death-row prisoner, appeals the

District Court's denial of his petition for a writ of habeas corpus. He argues that

his lawyers were ineffective during the penalty phase of his capital murder trial

because they failed to investigate, discover, or present as mitigating evidence the fact that he suffered sexual abuse as a child. The only question we answer today concerns the applicable standard of review. Although Mr. Williams's failure-to-investigate claims were fairly presented in state court, they were not decided "on the merits" within the meaning of 28 U.S.C § 2254(d). For this reason, we vacate the District Court's order denying Mr. Williams's failure-to-investigate claims and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Mr. Williams was convicted and sentenced to death for the murder of Melanie Rowell. Williams v. State, 795 So. 2d 753, 761 (Ala. Crim. App. 1999). Neither the facts of this brutal crime nor Mr. Williams's guilt are now in dispute. On the night of November 6, 1996, Mr. Williams snuck into Ms. Rowell's apartment, where Ms. Rowell and her two young children were asleep. Id. He entered Ms. Rowell's bedroom, climbed on top of her, and tried to remove her clothes. Id. She fought back, so he strangled her until she was motionless and then had intercourse with her. Id. at 762. "The cause of death was asphyxia due to strangulation." Id. (quotation omitted).

Mr. Williams gave several incriminating statements to law enforcement, and DNA testing confirmed that semen and blood found at the crime scene were consistent with his genetic profile. Id. at 766–67, 775. Faced with overwhelming

2

evidence of guilt, Mr. Williams's lawyers argued only that while he intended to rape Ms. Rowell that night, he did not intend to murder her.  Disagreeing, the jury found Mr. Williams guilty of capital murder.

The penalty phase was conducted before the same jury the next day.  It was short, consisting of only brief testimony by Mr. Williams's mother, Charlene Williams, and his aunt, Eloise Williams.  Charlene Williams told the jury that she was sixteen years old and unmarried when Mr. Williams was born, and that Mr. Williams had faced certain difficulties as a child.  For example, she testified that Mr. Williams sometimes lived with her grandmother and aunt; had no relationship with his father and lacked adult male figures in his life; and had to stop playing school sports after injuring his knee.  Mr. Williams's counsel also elicited testimony that portrayed him in a negative light, such as the fact that he was a high school dropout; he "started hanging with a rough crowd"; he got kicked out of the Job Corp for fighting; and upon returning home, he stopped going to church and "wanted to sleep all day and stay up all night."[1]

Eloise Williams also testified about Mr. Williams's unstable home life.  She told the jury that he had moved from place to place as a child and lived with different family members; he became sad and withdrawn at times because he did

---

[1] A capital defendant's history of violent and aggressive behavior is generally considered an aggravating factor.  See Holsey v. Warden, 694 F.3d 1230, 1269–70 (11th Cir. 2012).

3

not see his mother often; he had been a good student with no significant criminal history; and he had struggled emotionally after the deaths of his grandfather and uncle. However, as with Charlene, counsel also elicited evidence from Eloise that was likely more harmful than helpful. For example, Eloise told the jury that Mr. Williams had a quick temper; he had been arrested for fighting as a teenager;[2] he had not maintained regular employment after leaving high school; and not long before the crime, he started drinking and using drugs. Eloise ended on a positive note, telling the jury that since Mr. Williams had been in jail, he had stayed out of trouble and expressed remorse for his crime.

Neither Charlene nor Eloise was asked about Mr. Williams's history of sexual abuse. The State did not offer any rebuttal evidence. Following closing arguments and jury instructions, the jury deliberated for thirty minutes before returning its advisory verdict. Eleven jurors voted for death and one juror voted for life without parole.[3]

At a separate sentencing proceeding before the trial court, Mr. Williams testified and expressed remorse. Donna Rowell, the victim's mother, was the only

---

[2] The fact that Mr. Williams's counsel told the jury about these adolescent brushes with the law is noteworthy because the State could not have offered evidence of Mr. Williams's juvenile arrests to establish any aggravating factors. In Alabama, "juvenile charges, even those that result in an adjudication of guilt, are not convictions and may not be used to enhance punishment." Thompson v. State, 503 So. 2d 871, 880 (Ala. Crim. App. 1986) aff'd sub nom. Ex parte Thompson, 503 So. 2d 887 (Ala. 1987).

[3] Alabama does not require a unanimous jury verdict. Instead, the jury's decision to recommend the death sentence requires the vote of only ten jurors. Ala. Code § 13A-5-46(f).

4

other witness to testify. She told the trial court about the impact her daughter's death had on her family, including her daughter's young children. The court found that one aggravating circumstance existed: Mr. Williams committed murder while engaged in the commission of, or an attempt to commit, rape, robbery, burglary, or kidnapping. It also found that this aggravating factor outweighed the mitigating factors of Mr. Williams's lack of prior criminal history, his unstable home life as a child, his frustration resulting from the end of a promising athletic career, his attainment of his GED, and his remorse. The court sentenced Mr. Williams to death.

On direct appeal, Mr. Williams raised, among other arguments not relevant here, two ineffective-assistance-of-counsel claims related to the penalty phase of his trial. He argued that trial counsel were ineffective for failing to present (1) a mitigation expert or (2) documentary evidence. See Williams, 795 So. 2d at 782. His arguments at this stage did not mention that Mr. Williams had been sexually abused as a child. Instead, they focused on counsel's failure to present mitigating evidence in an unbiased and compelling manner.

The Alabama Court of Criminal Appeals found that Mr. Williams had not provided factual support for these claims, and affirmed his conviction and sentence. Id. at 784–85. The Alabama Supreme Court granted Mr. Williams's certiorari petition and also affirmed his conviction and sentence, holding that "[t]he

5

Court of Criminal Appeals thoroughly addressed and properly decided each of the issues raised on appeal . . . ." Ex parte Williams, 795 So. 2d 785, 787 (Ala. 2001).

In August 2004, Mr. Williams filed an amended petition for postconviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. For the first time, he claimed that counsel had failed to conduct a reasonable investigation. He argued that trial counsel had been ineffective by failing to "compile a constitutionally adequate social history for use in planning penalty-phase strategy," or "discover and present the many material details that would have supported a mitigation theory based on Mr. Williams' history of abuse and neglect," including that Mr. Williams had been "sexually abused by an older male" when he was a child. The petition also identified sixteen family members who could have testified about this history of abuse and neglect.

The St. Clair County Circuit Court (the "Rule 32 court") denied Mr. Williams's request for an evidentiary hearing and ultimately, his motion for post-conviction relief. First, it denied Mr. Williams's claim that trial counsel had failed to compile an adequate social history for failure to state a claim under Alabama Rule of Criminal Procedure Rule 32.7(d). After summarizing the testimony of Charlene and Eloise Williams, it found that counsel had presented "substantially the same evidence" that could have been discovered through a social history, and therefore were "not ineffective for failing to present cumulative evidence." The

Rule 32 court also dismissed Mr. Williams's claim that trial counsel had not discovered his history of abuse and neglect for failure to meet the specificity and full factual pleading requirements of Alabama Rule of Criminal Procedure Rule 32.6(b). The denial of relief under either Rule 32.6(b) or 32.7(d) is a merits determination. See Frazier v. Bouchard, 661 F.3d 519, 525–26 (11th Cir. 2011).

The Alabama Court of Criminal Appeals affirmed the denial of postconviction relief, but on different grounds. Not recognizing that Mr. Williams had presented his failure-to-investigate claims for the first time in his Rule 32 motion, it sua sponte held that all of his ineffective assistance of counsel claims were "procedurally barred from review because Williams raised allegations of ineffective assistance of counsel on direct appeal and those claims were addressed by this Court and by the Alabama Supreme Court on certiorari review. Rule 32.2(a)(4), Ala. R. Crim. P."[4]

In reaching this decision, the court relied on Davis v. State, 9 So. 3d 514 (Ala. Crim. App. 2006), which taught that the procedural bars set out in Alabama Rule of Criminal Procedure 32.2(a) were jurisdictional in nature. See Ex parte Clemons, 55 So. 3d 348, 352 (Ala. 2007) ("Although the Court of Criminal Appeals characterized the procedural bars of Rule 32.2(a) as mandatory, its

_____

[4]Alabama Rule of Criminal Procedure 32.2(a)(4) provides that a habeas petitioner will not be given relief on any ground "[w]hich was raised or addressed on appeal or in any previous collateral proceeding not dismissed pursuant to the last sentence of Rule 32.1 as a petition that challenges multiple judgments, whether or not the previous collateral proceeding was adjudicated on the merits of the grounds raised."

7

holding in <u>Davis</u> eliminates any meaningful distinction between a mandatory rule of preclusion and one that is jurisdictional."). Although the Alabama Supreme Court has since reversed course and overruled <u>Davis</u>, see <u>Clemons</u>, 55 So. 3d at 353, 356, the fact that the Court of Criminal Appeals found itself (and necessarily, the trial court) without jurisdiction to reach the merits of Mr. Williams's failure-to-investigate claims is important to this appeal, as we will explain later.

In 2007, Mr. Williams filed a federal habeas petition pursuant to 28 U.S.C. § 2254. In his amended petition, he once again argued that trial counsel were ineffective because they failed to conduct an adequate investigation. The petition alleged more detailed facts about Mr. Williams's childhood sexual abuse than had been presented in state court:

> Beginning when Marcus was about four years old until he was six, he was raped repeatedly by Mario Mostella, an older boy whose mother shared a house with Charlene Williams. Mario, then about age fifteen, enticed Marcus into playing a game, which he called "hide and find." Mario would tell Marcus to hide in a shed and wait for him to find him. Upon being found by Mario, Marcus would lie down on his stomach and was repeatedly subjected to anal rape. Initially, Mario made Marcus think it was just a game, but Marcus came to realize that it was wrong because it was always done in such secrecy. Eventually, Mario began to encourage Marcus to believe that it was his (Marcus') idea, and threatened to tell on Marcus. These rapes occurred three or four times in Ashville and also in Ohio, in the basement of the house Marcus and Charlene shared with Mario's family.

The District Court found that it owed 28 U.S.C. § 2254(d) deference to the Rule 32 court's decision, and reviewed the Rule 32 court's disposition of Mr.

8

Williams's failure-to-investigate claims "as [he] presented it to the state courts in the . . . Rule 32 petition, not as he more fully fleshed it out in the instant amended habeas petition." It concluded that the Rule 32 court's rejection of these claims was not contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). It agreed that because the jury had heard from Eloise and Charlene Williams about Mr. Williams's childhood and background, Mr. Williams had not demonstrated that presenting "additional cumulative facts would have changed the outcome."

Further, the District Court noted that "evidence of childhood abuse, like that of drug and alcohol abuse, often can be a double-edged sword, perhaps doing good or perhaps doing harm." It therefore could not simply assume that such evidence "would have had a mitigating effect." It denied both the petition and Mr. Williams's request for an evidentiary hearing. Mr. Williams now timely appeals.

## II.  DISCUSSION

As is often the case when considering a state prisoner's habeas petition, the applicable standard of review is of critical importance. The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a highly deferential standard of review for federal claims that have been "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Federal courts may not grant relief on the basis of any such claim unless the state court's decision was "contrary to, or

9

involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id.

On the other hand, if a state court refused to decide a claim "on the merits" because the claim was barred by state procedural rules, we are generally, though not always, prevented from reviewing the claim at all. See Cone v. Bell, 556 U.S. 449, 465, 129 S. Ct. 1769, 1780 (2009). This is because "[i]t is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Id. (quotation marks omitted).

However, resting between AEDPA deference and procedural default is a third path. If the state court did not reach the merits of a petitioner's claim based on some ground that is not adequate to bar federal review, we must review the claim de novo. Id. at 472, 129 S. Ct. at 1784. In these cases, we are not confined to the state-court record. See, e.g., Madison v. Comm'r, Ala. Dep't of Corr., 761 F.3d 1240, 1249–50 & n.9 (11th Cir. 2014); Mosley v. Atchison, 689 F.3d 838, 844 (7th Cir. 2012) ("If § 2254(d) does not bar relief, then an evidentiary hearing may be needed.").

Given this framework, Mr. Williams's appeal presents two important questions: (1) whether the Rule 32 court's decision is entitled to AEDPA deference under § 2254(d); and (2) if we cannot look to the Rule 32 court's decision as an "adjudication on the merits," whether the Alabama Court of Criminal Appeals' application of a procedural bar—specifically, Alabama Rule of Criminal Procedure 32.2(a)(4)—prevents federal review altogether. We hold that the answer to both questions is no.

## A.

Under § 2254(d), AEDPA's deferential standard of review is limited to claims that have been "adjudicated on the merits" in state court. A decision that is based on state procedural grounds is not an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 99, 131 S. Ct. 770, 784–85 (2011).

In this case, the Rule 32 court decided Mr. Williams's failure-to-investigate claims on the merits, but the Court of Criminal Appeals did not. Instead, it held that these claims were "procedurally barred from review because Williams raised allegations of ineffective assistance of counsel on direct appeal and those claims were addressed by this Court and by the Alabama Supreme Court on certiorari review. Rule 32.2(a)(4), Ala. R. Crim. P."

Neither decision is entitled to AEDPA deference under § 2254(d). First, we cannot treat the Court of Criminal Appeals' decision as a merits determination

11

because that court clearly told us that it did not consider the merits of Mr. Williams's failure-to-investigate claims.  As the Supreme Court explained in Richter, we only presume that a state court reached the merits when there is no "reason to think some other explanation for the state court's decision is more likely."  562 U.S. at 99–100, 131 S. Ct. at 785.  In this case, our reason is clear— the Court of Criminal Appeals expressly held that Mr. Williams's claims were "procedurally barred."

Second, we cannot accord AEDPA deference to the Rule 32 court's decision because that decision was rejected by a higher state court on the basis of state law. Although the state contends that there is no indication that the Court of Criminal Appeals disagreed with the Rule 32 court's decision, the Court of Criminal Appeals invoked a jurisdictional procedural bar.  See Clemons, 55 So. 3d at 352 (explaining that, at the time of Mr. Williams's appeal, the Court of Criminal Appeals treated Rule 32.2(a)'s procedural bars as jurisdictional).

This means that the Court of Criminal Appeals found itself—and necessarily, the Rule 32 court as well—without the authority to even consider the merits of Mr. Williams's failure-to-investigate claims.  See Davis, 9 So. 3d at 522 (applying Rule 32 procedural bar sua sponte and stating that "this Court has no authority to modify or amend the procedural bars contained in Rule 32"); see also Hurth v. Mitchem, 400 F.3d 857, 858 (11th Cir. 2005) ("A rule is jurisdictional if

12

the petitioner's non-compliance with it actually divests the state courts of power and authority to decide the underlying claim, instead of merely offering the respondent an opportunity to assert a procedural defense which may be waived if not raised."). Thus, the Court of Criminal Appeals disagreed that the Rule 32 Court had jurisdiction to make any merits determination at all, including the one that it made.

For this reason, the State's reliance on Loggins v. Thomas, 654 F.3d 1204 (11th Cir. 2011), and Hammond v. Hall, 586 F.3d 1289 (11th Cir. 2009), is misplaced. Those cases simply hold that when state trial and appellate courts make alternative, but consistent, merits determinations, we accord AEDPA deference to both decisions. See Loggins, 654 F.3d at 1217 ("Our case law also makes clear that we accord AEDPA deference not only to the adjudications of state appellate courts but also to those of state trial courts that have not been overturned on appeal."); Hammond, 586 F.3d at 1331 ("In deciding to give deference to both decisions, the critical fact to us is that the Georgia Supreme Court does not appear to have disagreed with the trial court's decision on the deficiency element."). But where, as here, a state trial court issues a decision that the state appellate court does not agree with, we consider only the state appellate court's decision.

Unlike the state court decisions in Loggins and Hammond, the Court of Criminal Appeals' holding that the Rule 32 court did not have the authority to

13

consider the merits of Mr. Williams's failure-to-investigate claims is not consistent with the Rule 32 court's decision addressing the merits of those claims. Thus, our respect for the state court judgment—and the "fundamental principle that state courts are the final arbiters of state law," Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1355 (11th Cir. 2005) (quotation omitted)—prevents us from deferring to the Rule 32 court's decision.

## B.

Having concluded that we cannot accord AEDPA deference to the Rule 32 court's decision, we now turn to the Court of Criminal Appeals' holding that Mr. Williams's failure-to-investigate claims were procedurally barred. Generally, a state court's refusal to reach the merits of a claim for failure to comply with state procedural rules serves as an "independent and adequate state ground for denying federal review." Cone, 556 U.S. at 465, 129 S. Ct. at 1780. But because adequacy is a federal question, federal review is not "barred every time a state court invokes a procedural rule to limit its review of a state prisoner's claims." Id. (quotation omitted). The question, then, is whether the Court of Criminal Appeals' application of Alabama Rule of Criminal Procedure 32.2(a)(4)—and its incorrect finding that Mr. Williams's claims had been previously raised and addressed on direct appeal—prevents our review. Binding Supreme Court precedent requires us to hold that it does not.

14

Federal courts have long recognized that a state court's refusal to re-address the merits of a claim, on the grounds that the claim has already been given full consideration in some previous proceeding, imposes no barrier to federal review. See Ylst v. Nunnemaker, 501 U.S. 797, 804 n.3, 111 S. Ct. 2590, 2595 n.3 (1991). Instead, this type of state-court decision "provides strong evidence that the claim has already been given full consideration by the state courts and thus is ripe for federal adjudication." Cone, 556 U.S. at 467, 129 S. Ct. at 1781; see also Page v. Frank, 343 F.3d 901, 907 (7th Cir. 2003) (state-court decision that it "would not readdress issues that had been litigated previously" did not bar federal review); Brecheen v. Reynolds, 41 F.3d 1343, 1358 (10th Cir. 1994) ("Oklahoma's rule preventing relitigation in state postconviction proceedings of claims raised and decided on direct appeal does not constitute a procedural bar to federal habeas review.").

The Supreme Court's decision in Cone teaches that this principle applies even where, as here, a state court wrongly finds that a claim has already been raised and addressed. In Cone, Gary Cone was convicted and sentenced to death for two murders. 556 U.S. at 453, 456, 129 S. Ct. at 1773, 1775. On direct appeal, he unsuccessfully argued that prosecutors violated state law by failing to disclose relevant evidence. Id. at 457, 129 S. Ct. at 1775. Several years later, he filed a state habeas petition in which he argued for the first time that prosecutors violated

15

his constitutional rights under <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194 (1963). <u>Cone</u>, 556 U.S. at 458, 129 S. Ct. at 1776. The state post-conviction court, conflating the <u>Brady</u> claim with Mr. Cone's earlier state-law claim, found that it could not consider the <u>Brady</u> claim because it had already been decided on direct appeal. <u>See id.</u> at 460, 129 S. Ct. at 1777.

Mr. Cone next raised his <u>Brady</u> claim in a federal habeas petition, but the Sixth Circuit ultimately determined that the state procedural bar also prevented federal review. <u>Id.</u> at 462–63, 467, 129 S. Ct. at 1778–79, 1781. The Supreme Court reversed, explaining that "[w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." <u>Id.</u> at 466, 129 S. Ct. at 1781. This was so despite the fact that the state postconviction court's decision rested on a "false premise"—Mr. Cone had in fact never brought a <u>Brady</u> claim prior to his habeas petition. <u>Id.</u> at 466, 129 S. Ct. at 1780. The Supreme Court noted that although the state postconviction court could have found that Mr. Cone waived his <u>Brady</u> claim by failing to raise it on direct appeal, it had made no such ruling—and federal courts "have no concomitant duty to apply state procedural bars where state courts have themselves declined to do so." <u>Id.</u> at 467–69, 129 S. Ct. at 1781–82.

<u>Cone</u> controls here. As in <u>Cone</u>, the Court of Criminal Appeals' application of Alabama Rule of Criminal Procedure 32.2(a)(4) rested on a false premise. On

16

direct appeal, Mr. Williams argued that trial counsel were ineffective because of their failure to present expert testimony and documentary evidence during the penalty phase of his trial.  Williams, 795 So. 2d at 782.  In contrast, Mr. Williams's Rule 32 petition argued that trial counsel were ineffective due to their failure to conduct a reasonable investigation—more specifically, by failing to "compile a constitutionally adequate social history for use in planning penalty-phase strategy," or to "discover and present the many material details that would have supported a mitigating theory based on Mr. Williams' history of abuse and neglect."  Cf. Kelley v. Sec'y, Dep't of Corr., 377 F.3d 1317, 1347–49 (11th Cir. 2004) (holding that a petitioner's failure-to-investigate claim was distinct from more specific ineffective assistance claims based on counsel's failure to develop a successful theory of defense).  Despite this factual error, the Court of Criminal Appeals clearly held that it could not address Mr. Williams's failure-to-investigate claims under Alabama Rule of Criminal Procedure 32.2(a)(4), which prevents state courts from considering previously determined claims.[5]  Under Cone, this does not preclude federal review.

---

[5]  Although the state court could, perhaps, have found that Mr. Williams waived his failure-to-investigate claims by not raising them on direct appeal, see Ala. R. Crim. P. 32.2(a)(5), it did not.  And as the Supreme Court explained in Cone, we "have no concomitant duty to apply state procedural bars where state courts have themselves declined to do so."  556 U.S. at 468–69, 129 S. Ct. at 1782.

C.

The District Court treated the Rule 32 court's decision as an "adjudication on the merits" under § 2254(d) and found that the court's disposition of Mr. Williams's failure-to-investigate claims was not contrary to, or an unreasonable application of, Strickland. This was error. Section 2254(d)'s deferential standard of review has no application and federal courts must review Mr. Williams's claims de novo.

Still, we are reluctant to do so in the first instance because many of the factual allegations in Mr. Williams's federal petition remain untested. Mr. Williams requested, but was never granted, an evidentiary hearing in state and federal court. Based on our ruling here, the District Court is not limited to the state-court record, see Madison, 761 F.3d at 1249–50 & n.9, so we remand to the District Court to determine whether Mr. Williams is entitled to an evidentiary hearing in light of this opinion.[6]

To guide the District Court in the exercise of its discretion, we add the following observations. First, "[s]ection 2254(e)(2) continues to have force where

---

[6] We recognize that Mr. Williams's federal petition contains more factual detail than his Rule 32 petition. However, his Rule 32 petition clearly alleged that trial counsel had not met Strickland's standards because they failed to "compile a constitutionally adequate social history for use in planning penalty-phase strategy," or "discover and present the many material details that would have supported a mitigating theory based on Mr. Williams' history of abuse and neglect," including that Mr. Williams had been "sexually abused by an older male" when he was a child. Thus, his failure-to-investigate claims were "fairly presented" in state court. Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351 (11th Cir. 2012).

18

§ 2254(d)(1) does not bar federal habeas relief," Cullen v. Pinholster, 563 U.S. ___, ___, 131 S. Ct. 1388, 1401 (2011). That provision bars the district court from holding an evidentiary hearing "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings" unless certain circumstances are shown. 28 U.S.C. § 2254(e)(2). But "[b]y the terms of its opening clause the statute applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'" Williams v. Taylor, 529 U.S. 420, 430, 120 S. Ct. 1479, 1487 (2000) (quoting 28 U.S.C. § 2254(e)(2)). In this context, the Supreme Court has explained that "'fail' connotes some omission, fault, or negligence" on the part of the petitioner. Id. at 431, 120 S. Ct. at 1488. Thus, "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Id. at 432, 120 S. Ct. at 1488; see also Breedlove v. Moore, 279 F.3d 952, 960 (11th Cir. 2002) ("[A] petitioner cannot be said to have 'failed to develop' relevant facts if he diligently sought, but was denied, the opportunity to present evidence at each stage of his state proceedings.").

In other words, the District Court on remand must determine whether Mr. Williams "was diligent in his efforts" to develop the factual record in state court. Williams, 529 U.S. at 435, 120 S. Ct. at 1490. In Williams, the Supreme Court explained "[d]iligence . . . depends upon whether the prisoner made a reasonable

19

attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." Id. And "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Id. at 437, 120 S. Ct. at 1490 (emphasis added). We express no opinion about whether Mr. Williams "failed to develop" his claims within the meaning of § 2254(e)(2).

Second, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S. Ct. 1933, 1940 (2007). As the Supreme Court recognized in Williams, an attorney representing a capital defendant has an "obligation to conduct a thorough investigation of the defendant's background." 529 U.S. at 396, 120 S. Ct. at 1515. With this in mind, the District Court must consider Mr. Williams's allegations that his lawyers spent "less than ten hours" preparing for the sentencing phase of his trial and spoke with only Mr. Williams's mother and aunt.

Third, because the sentencing judge and jury never heard evidence that Mr. Williams was a victim of sexual abuse, such evidence is not "cumulative." Neither is it a "double-edged sword." Mr. Williams's federal habeas petition alleges that

20

"[b]eginning when Marcus was about four years old until he was six, he was raped repeatedly by Mario Mostella, an older boy whose mother shared a house with Charlene Williams."  The fact that a defendant "suffered physical torment, sexual molestation, and repeated rape" during childhood can be powerful mitigating evidence, and is precisely the type of evidence that is "relevant to assessing a defendant's moral culpability." Wiggins v. Smith, 539 U.S. 510, 535, 123 S. Ct. 2527, 2542 (2003).

Finally, we recognize that Mr. Williams's pretrial competency report states that he denied past physical, emotional, or sexual abuse.  Although this may be relevant to the District Court's Strickland analysis, it does not by itself foreclose relief.  Because this report only evaluated Mr. Williams's "competency to stand trial and mental state at the time of the alleged offense," it is not an adequate substitute for the "thorough investigation" required of attorneys representing capital defendants.  Williams, 529 U.S. at 396, 120 S. Ct. at 1515.  This is especially true because the competency report itself came with a significant disclaimer: "this information should be viewed cautiously without verification by a third party."

### III.  CONCLUSION

We vacate the District Court's order denying Mr. Williams's failure-to-investigate claims and its order denying an evidentiary hearing on those claims.

21

This case is remanded to the District Court to determine whether Mr. Williams is entitled to an evidentiary hearing and to reconsider his failure-to-investigate claims de novo.

**VACATED AND REMANDED.**