[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 16-12863

————————————————

D.C. Docket No. 8:15-cv-00185-VMC-TBM

GLEN T. JONES, JR.,

Petitioner - Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,

Respondent - Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(June 14, 2019)

Before JORDAN and ROSENBAUM, Circuit Judges, and MARTINEZ,* District
Judge.

PER CURIAM:

---

*Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida,
sitting by designation.

The language of the Double Jeopardy Clause of the Fifth Amendment—
"[N]or shall any person be subject for the same offence to be twice put in jeopardy
of life or limb," U.S. Const. amend. V—appears simple on its face.  But as Justice
Rehnquist once remarked, "the decisional law in the area is a veritable Sargasso Sea
which could not fail to challenge the most intrepid judicial navigator."  *Albernaz v.
United States*, 450 U.S. 333, 343 (1981).  Today we confront a double jeopardy
scenario which is, as far as we can tell, infrequent.

Glen Jones, a Florida prisoner proceeding pro se, filed a habeas corpus petition
in the district court pursuant to 28 U.S.C. § 2254.  As relevant here, he argued that
his two identically-worded convictions for unlawful sexual activity with a minor,
*see* Fla. Stat. § 794.05 (2006), violated the prohibition against double jeopardy.  The
district court rejected Mr. Jones' double jeopardy claim on two grounds.  First, it
ruled that, as the state post-conviction court had found, the claim was procedurally
defaulted.  Second, it concluded alternatively that the claim failed on the merits.

We granted Mr. Jones a certificate of appealability on the double jeopardy
claim, appointed counsel for him, and have now had the benefit of oral argument.
We conclude that Mr. Jones' double jeopardy claim was not procedurally barred. On
the merits, we disagree in part with the district court and hold that the circumstances
surrounding Mr. Jones' two convictions do create a double jeopardy concern—the
inability of Mr. Jones to plead estoppel in a future similar prosecution due to his

2

inability to know which instances of conduct formed the basis of the jury verdict. But we do not grant Mr. Jones habeas relief because he cannot demonstrate prejudice under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Briefly stated, the evidence at trial was sufficient to allow the jury to convict Mr. Jones of two separate instances of unlawful sexual activity with a minor, and the statute of limitations has run on any future prosecution for similar conduct with the same minor—the type of prosecution which might pose double jeopardy problems. We therefore affirm the district court's denial of Mr. Jones' habeas petition.

## I

Beginning in 2005, Mr. Jones, then 45 years old, began a sexual relationship with his daughter's 16-year-old friend, H.R. In November of that year, law enforcement began to investigate the relationship after Florida's Department of Children and Families received a tip detailing inappropriate conduct between the two. H.R. initially denied having an inappropriate relationship with Mr. Jones, but later admitted to the relationship in February of 2006 once police learned she had become pregnant. In March of 2006, authorities arrested Mr. Jones and charged him by information with two counts of unlawful sexual activity with a minor. H.R. gave birth in August of 2006 and DNA testing confirmed that Mr. Jones was the child's father.

3

Mr. Jones proceeded to trial in September of 2007. By this time, the state had filed its third amended information, charging Mr. Jones with committing the same statutory offense in two nearly-identical counts:

1) UNLAWFUL SEXUAL ACTIVITY WITH A MINOR
2) UNLAWFUL SEXUAL ACTIVITY WITH A MINOR

In the Name and by Authority of the State of Florida:

[COUNT 1:] JERRY HILL, State Attorney for the Tenth Judicial Circuit, by and through his undersigned Assistant State Attorney, charges that GLEN T JONES between June 1, 2005 and February 2, 2006, in the County of Polk and State of Florida, did, on one or more occasions, while 24 years of age or older, engage in sexual activity with [H.R.], a person 16 or 17 years of age, by uniting or penetrating the vagina of [H.R.], with the sexual organ of GLEN T JONES, contrary to Florida Statute 794.05. (2 DEG FEL) (LEVEL 6)

COUNT 2: Informant aforesaid, under oath, further information makes that GLEN T JONES between June 1, 2005 and February 2, 2006, in the County of Polk and State of Florida, GLEN T JONES did, on one or more occasions, while 24 years of age or older, engage in sexual activity with [H.R.], a person 16 or 17 years of age, by uniting or penetrating the vagina of [H.R.] with the sexual organ of GLEN T JONES, contrary to Florida Statute 794.05. (2 DEG FEL) (LEVEL 6)

Not only did the counts have virtually identical language, each one of them alleged one or more instances of unlawful conduct.

At trial, the parties did not dispute that Mr. Jones had some sexual contact with H.R. Rather, the dispute was over how many episodes of sexual contact there were, when they occurred, and the circumstances under which they took place.

4

H.R. testified that she and Mr. Jones had sexual relations on several occasions and, although she did not provide specific dates, described the instances in some detail. The first instance occurred at nighttime while she was having a sleepover with Mr. Jones' daughter. H.R. explained that Mr. Jones came into the room where she was sleeping, woke her up, and told her to come with him to his bedroom. She followed him and, once they got to his bedroom, the pair began to have sex. The second instance, H.R. said, was some time later when she had another sleepover with Mr. Jones' daughter. H.R. described a third instance which followed the same pattern, except that this time the sex was unprotected. A fourth instance, according to H.R., occurred behind a Walgreens in Mr. Jones' truck after he picked her up from work at Checkers. Although H.R. was unsure of dates, she testified that there were "a few other times" after that when the pair had sex. So, if H.R.'s testimony was credited, Mr. Jones had sex with her five or six times.

H.R. explained that she became pregnant sometime in October or November of 2005 and gave birth to a baby girl in August of 2006. On cross-examination, H.R. acknowledged that she was unsure of details regarding the specific instances of when she and Mr. Jones had sex. She agreed with the prosecutor on re-direct, however, that they had sex on "numerous occasions."

The prosecution introduced a recorded phone call that H.R. made to Mr. Jones on February 27, 2006, while being supervised by detectives. The call began with

5

H.R. asking why Mr. Jones had suggested that she have an abortion.  Mr. Jones denied being the father, stating "[y]ou and I did not have any sex for 38 days before [an estimated conception date], and we didn't have any sex for 36 days after that." H.R. responded that she only remembered them having sex "four times" and then asked Mr. Jones if he remembered the specific dates, to which Mr. Jones responded that he did.  He stated that they had sex in November (of 2005) and also on January 16, 2006.  The conversation was then abruptly cut short by Mr. Jones, who asked H.R. to call him back later that night.

Before concluding its case, the prosecution introduced the testimony of a crime lab technician from the Florida Department of Law Enforcement.  He explained that DNA analysis had identified Mr. Jones as the father of H.R.'s daughter.

Mr. Jones testified in his own defense.  He stated that he and H.R. had possible sexual contact one time, on October 21, 2005, which H.R. initiated.   According to Mr. Jones, he was asleep in his locked bedroom and woke up at 4 a.m. to find H.R. nude in his bed and on top of him.  He testified that he was wet and assumed that the fluid was from H.R.'s vagina.  He also said that he had an erection, but could not confirm whether he had ejaculated.  Mr. Jones confronted H.R. and told her to get dressed and leave his room, which she did after resisting.

Closing arguments were brief.  The prosecutor did not attempt to identify or specify which two instances of unlawful sexual activity Mr. Jones was guilty of.  Nor did the prosecutor parse out each individual instance.  Instead, he explained that the evidence showed that H.R. "had sexual intercourse with the defendant numerous times."  The only specific instance discussed was the October 2005 episode of sexual contact that Mr. Jones admitted to (although he claimed to have slept through the event).  The prosecutor also argued that conception occurred in November or December of 2005 and that, based on this evidence "there was more than one incidence of sexual activity with the victim . . . it happened more than on one October."  Mr. Jones' counsel gave a very brief argument, explaining that the jury would have to "decide who to believe"—Mr. Jones or H.R.

The trial court then instructed the jury.  Although told that the verdict must be unanimous, that each count had to be "considered separately, and a separate verdict returned as to each," the jury was not instructed that it had to agree on the specific instances of sexual activity or which instance was being charged in which count. The jury was only instructed that it must find that the state proved three elements beyond a reasonable doubt: (1) that H.R. was 16 or 17 years of age; (2) that Mr. Jones was age 24 or older; and (3) that Mr. Jones engaged in sexual activity in which his sexual organ penetrated or had union with the vagina of H.R.     The     jury returned a verdict that same afternoon, finding Mr. Jones "Guilty of Unlawful Sexual

7

Activity with a Minor" on both charges in a general verdict form. The verdict form did not ask for, and the jury did not provide, findings as to which instances of sexual activity formed the basis for the guilty verdicts. The trial court sentenced Mr. Jones to 15 years' imprisonment on Count One and a consecutive term of 15 years' probation on Count Two.

Mr. Jones pursued a direct appeal and sought post-conviction relief, all without success. On September 14, 2012, Mr. Jones filed a pro se motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a). In that motion, he argued that his two convictions violated the Double Jeopardy Clause under the United States and Florida Constitutions. The state post-conviction court construed Mr. Jones' motion as one challenging the sufficiency of the evidence and struck it because Rule 3.800(a) could not be used to mount sufficiency challenges to the evidence. Mr. Jones appealed that order to the state intermediate appellate court, which summarily affirmed.

Mr. Jones, still proceeding pro se, raised his double jeopardy claim (among others) in his federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied relief on this claim, concluding that the state court had applied a procedural bar, and that bar prevented review. Alternatively, the district court denied relief on the merits, holding that nothing prevented the state from bringing a separate charge for each violation of the statute.

Mr. Jones appealed.  As noted, we granted him a COA on his double jeopardy claim and appointed counsel to represent him on appeal. We thank counsel for his able service to Mr. Jones and to the court.[1]

## II

"Under the doctrine of procedural default, a federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment[.]'" *Conner v. Hall*, 645 F.3d 1277, 1287 (11th Cir. 2011) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  *See also Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule.").  A state bar, however, must be adequate and independent.  *See Spencer v. Kemp*, 781 F.2d 1458, 1470–71 (11th Cir. 1986) (en banc) ("It is a dominant theme of the Supreme Court case law . . . that a federal habeas petitioner shall not be denied federal review of a federal

---

[1] In the brief that he has filed on behalf of Mr. Jones, counsel makes an additional argument.  He contends that Count One is duplicitous because it improperly charges more than one offense.  *See generally United States v. Chrane*, 529 F.2d 1236, 1237 n.3 (5th Cir. 1976) (explaining the concept of duplicity).  The argument is not without some force, but we decline to address it for two reasons. First, Mr. Jones did not raise a duplicity claim in the state court, and therefore has not exhausted such a claim.  *See* 28 U.S.C. § 2254(b)(1)(A).  Second, Mr. Jones did not raise a duplicity argument in the district court, and normally issues cannot be raised for the first time on appeal.

constitutional claim on the basis of an asserted state procedural ground that is manifestly unfair in its treatment of that claim.").

The "adequacy of state procedural bars to the assertion of federal questions is itself a federal question." *Douglas v. Alabama*, 380 U.S. 415, 422 (1965). We apply a three-part test to determine adequacy. *See Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citing *Card v. Dugger*, 911 F.2d 1494, 1516–17 (11th Cir. 1990)). First, the state court must "clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." *Id*. Second, the state court decision must rest "solidly on state law grounds, and may not be intertwined with an interpretation of federal law." *Id*. (quotation marks omitted). Third, "the state procedural rule must be adequate; i.e., it must not be applied in an arbitrary or unprecedented fashion." *Id*. "The state court's procedural rule cannot be 'manifestly unfair' in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine." *Id*. (quoting *Card*, 911 F.2d at 1517).

Mr. Jones' pro se Rule 3.800(a) motion made clear that he was raising a double jeopardy challenge—and not a sufficiency challenge—to his convictions. The motion referred to double jeopardy on six of its seven pages (often multiple times on a page). For example, the motion stated that "[d]ual sentences for the two offenses charged in this case, were imposed in violation of Defendant's right to be

10

free of Double Jeopardy," that "[t]he constitutional guarantee against double jeopardy, prohibits [ ] multiple convictions that are not sufficiently discrete to be deemed separate offenses," and that his "convictions . . . for two (2) counts of alleged sexual battery violated Double Jeopardy, because the charging information did not include language clearly predicating the disputed charges in the distinct alleged sex acts[.]" The motion cited the Fifth Amendment and relevant case law, including one of the seminal Supreme Court cases interpreting the Double Jeopardy Clause, *Blockburger v. United States*, 284 U.S. 299, 304 (1932), and described its "same elements" test. It also cited Florida cases finding double jeopardy violations in sexual battery cases. *See, e.g., Gisi v. State*, 909 So. 2d 531, 533 (Fla. 2d DCA 2005) ("The constitutional guarantee against double jeopardy prohibits multiple convictions for lewd and lascivious acts that are not sufficiently discrete to be deemed separate offenses.").

The state post-conviction court issued a short order striking Mr. Jones' Rule 3.800(a) motion:

> Though Defendant couches his claim in the language of double jeopardy, a review of the Motion indicates that he is actually claiming that the State did not adequately prove multiple sexual episodes within the time frame alleged. This is not cognizable in a motion pursuant to Rule 3.800(a). Furthermore, this Court has already addressed this issue in its Order issued on August 23, 2012.

Mr. Jones does not deny that this procedural ground was independent, so the only question is whether it was adequate. We hold that it was not.

11

The procedural default rule applies "where the state court *correctly* applies a procedural default principle of state law[.]" *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (emphasis added). Accordingly, "[t]he procedural default doctrine self-evidently is limited to cases in which a 'default' actually occurred—i.e., cases in which the prisoner actually violated the applicable state procedural rule." 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 26.2[c] (7th ed. 2017). *See also Sivak v. Hardison*, 658 F.3d 898, 907 (9th Cir. 2011) ("[W]e follow the Supreme Court and our sister circuits in holding that an erroneously applied procedural rule does not bar federal habeas review."); *Mapes v. Coyle*, 171 F.3d 408, 429 (6th Cir. 1999) (finding a procedural bar inadequate where the issue was raised but the state court erroneously refused to consider it); *Kubat v. Thieret*, 867 F.2d 351, 366 n.11 (7th Cir. 1989) (finding a procedural bar inadequate where the state court ruled that the petitioner waived the claim but the "record clearly show[ed] . . . that [petitioner] did in fact raise and argue the issue"); *Walker v. Engle*, 703 F.2d 959, 966 (6th Cir. 1983) ("We believe that when a state appellate court applies a procedural bar that has no foundation in the record or state law, the federal courts need not honor that bar."); Brian R. Means, Federal Habeas Manual § 9B:12 (2018 ed.) ("It probably goes without saying that application of the procedural default doctrine depends on the petitioner having actually violated the applicable state procedural rule.").

12

The state post-conviction court's failure to recognize that Mr. Jones raised a federal double jeopardy claim is difficult to understand given the extent to which he described that challenge, with pertinent authority, in his motion. A state court does not correctly apply a procedural bar by characterizing a petitioner's motion as something that it is not. *See Mapes*, 171 F.3d at 429. *See also Douglas*, 380 U.S. at 420–23 (finding Alabama procedural bar "plainly inadequate" where defense counsel made objections to subject matter and in "light of th[e] record it [wa]s difficult to understand the Court of Appeals' conclusion" that the claim was defaulted by counsel's failure to object to each and every question). By failing to recognize that Mr. Jones had raised a federal double jeopardy claim, by incorrectly characterizing that claim into a different sufficiency of the evidence claim, and by applying a procedural bar to the re-characterized claim, the state post-conviction court acted in a way that was "manifestly unfair in its treatment of [Mr. Jones'] federal constitutional claim." *Judd*, 250 F.3d at 1313 (citing *Card*, 911 F.2d at 1517) (quotation marks omitted). The procedural bar is therefore inadequate. *See id*. at 1318 (finding manifestly unfair the application of a state procedural bar where "[t]he court misconstrued federal law in finding the record insufficient for a consideration of Judd's appeal on the merits").

In its brief, the state tellingly does not argue that the state post-conviction court properly construed Mr. Jones' Rule 3.800(a) motion as one challenging the

sufficiency of the evidence.  The state does, however, argue that Mr. Jones' claim is still procedurally barred because a double jeopardy challenge has to be made through a Rule 3.850 motion—not a Rule 3.800(a) motion.  This newly-minted argument fails for two reasons.

First, we reject the state's contention that the state post-conviction court's order can be read to have denied Mr. Jones' claim on the ground that double jeopardy challenges are not cognizable under Rule 3.800(a).  To begin, the text of the court's order says otherwise.  And because the state intermediate appellate court issued a summary affirmance of that order, we "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale," and assume that it "adopted the same reasoning."  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  The state presents no argument to rebut the *Wilson* presumption, and the record reveals none.

Second, we decline to consider this additional procedural bar because the state raises it for the first time on appeal.  Critically, Florida "failed to raise th[at] defense . . . in the district court, and the court did not bring it up either."  *Howard v. United States*, 374 F.3d 1068, 1073 (11th Cir. 2004).  The state cannot "benefit[ ] now from a defense it did not raise then."  *Id*.  *See also Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1340 (11th Cir. 2009) ("If . . . the petitioner did raise the claim in the state courts but not at the time or in the manner required by state procedural rules, the

14

resulting procedural bar defense may be waived by the [s]tate's failure to assert it.").

Regardless of the validity of its new procedural default argument—which the parties

dispute—the state was "obligated to raise and preserve" it below or "lose the right

to assert the defense thereafter." *Trest v. Cain*, 522 U.S. 87, 89 (1997) (alterations

adopted and quotation marks omitted).

## III

We review the denial of a writ of habeas corpus de novo.  *See Muhammad v.

Sec'y, Fla. Dep't of Corr.*, 733 F.3d 1065, 1071 (11th Cir. 2013).  The state post-

conviction court rejected Mr. Jones' double jeopardy claim on an inadequate and

erroneous procedural ground and accordingly never reached the merits of that claim.

Because we have concluded that the state post-conviction court incorrectly applied

a procedural bar to the double jeopardy claim, we review that claim de novo and do

not apply AEDPA's deferential standard of review, as set forth in 28 U.S.C. §

2254(d).  *See, e.g.*, *Williams v. Alabama*, 791 F.3d 1267, 1273 (11th Cir. 2015).

## A

The Supreme Court summarized the "three separate constitutional

protections" of the Double Jeopardy Clause in *North Carolina v. Pearce*, 395 U.S.

711, 717 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S.

794 (1989):  "It protects against a second prosecution for the same offense after

acquittal.  It protects against a second prosecution for the same offense after

15

conviction. And it protects against multiple punishments for the same offense." In order to protect against a future prosecution for the same offense, an indictment must be specific enough to enable a defendant to "plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). *See also United States v. Pease*, 240 F.3d 938, 943 (11th Cir. 2001).

In a situation like that of Mr. Jones, where there is a post-trial double jeopardy challenge to multiple convictions under the same statute, we look beyond the elements of the offense and "examine the trial record to resolve a double jeopardy claim." *United States v. Fiallo-Jacome*, 784 F.2d 1064, 1066 (11th Cir. 1986) (reviewing the evidence at trial to answer the "crucial factual question" of whether the defendant "continuously possessed cocaine or whether he had it in his possession on two distinct occasions"). *See also United States v. Jones*, 601 F.3d 1247, 1259 (11th Cir. 2010) (relying on a verdict form, which required the jury to make special findings, and the evidence at trial to reject the defendant's argument that his convictions were multiplicitous). Take, for example, *United States v. Bonavia*, 927 F.2d 565 (11th Cir. 1991). Bonavia was charged and convicted of three counts of possession of a firearm by a convicted felon under the same statute, 18 U.S.C. § 1202(a)(1). The government conceded that some of the convictions were multiplicitous, but argued that the convictions on the other counts were still valid because each "allege[d] a separate and distinct possession which support[ed] a

16

separate conviction and sentence." *Id*. at 568.  We first determined the permissible

"unit of prosecution," and agreed with the government that "if evidence presented at

trial establishes that [the] defendant, at some point in the period covered by the

indictment, separated one of the weapons charged in the indictment and possessed

that weapon separately . . . the government may treat that weapon as a separate unit

of prosecution." *Id*. at 569.  We then reviewed the trial testimony and determined

that it established two separate instances of possession, thus supporting the

convictions on two of the three counts. *See id*. at 569–70.  We reversed the third,

multiplicitous count. *Id.* at 571.

     Faced with a similar challenge, the Fifth Circuit succinctly explained the

appropriate mode of analysis.  The test is identical to the analysis we undertook in

*Bonavia*, so we borrow its simple formulation here.  "First, we look to the statute

charged to ascertain the 'allowable unit of prosecution,' or the *actus reus* of the crime

. . . . Second, we review the evidence to see how many distinct criminal acts the

defendant committed." *United States v. Woerner*, 709 F.3d 527, 539–40 (5th Cir.

2013) (concluding that counts were not multiplicitous because the evidence showed

that the defendant possessed separate devices containing child pornography and the

images contained in those devices were downloaded through different transactions

on different dates).  *Accord Bonavia*, 927 F.2d at 568–70 (first determining the

allowable "unit of prosecution" and then reviewing trial evidence to determine if it supported multiple convictions).

**B**

We now apply this test.  Because Mr. Jones was convicted of unlawful sexual activity with a minor, in violation of Fla. Stat. § 794.05, we look to that statute to determine the allowable unit of prosecution.  Once the legislature "has defined a statutory offense by its prescription of the 'allowable unit of prosecution,' that prescription determines the scope of protection afforded by a prior conviction or acquittal." *Sanabria v. United States*, 437 U.S. 54, 69–70 (1978) (citations omitted). "Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this congressional choice." *Id*. at 70.  *See also Brown v. Ohio*, 432 U.S. 161, 165 (1977) ("The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments[.]").

The Florida legislature's choice is clear.  As relevant here, § 794.05(1) prohibited "[a] person 24 years of age or older" from engaging in "sexual activity with a person 16 or 17 years of age," and criminalized each prohibited sexual act, as defined in the statute.  *See Terry v. State*, 224 So. 3d 763, 764 (Fla. 4th DCA 2017) (affirming convictions for 13 counts of violating § 794.05); *Jones v. State*, 127 So. 3d 622, 623 (Fla. 4th DCA 2013) (affirming multiple convictions under § 794.05 based on three separate occasions in which the defendant and the minor victim

18

engaged in sexual intercourse).  We note, as well, that Florida courts have considered the lewd and lascivious battery statute, Fla. Stat. § 800.04—which prohibits certain "sexual activity" using identical terms as § 794.05—to permit punishment for each distinct "episode" or incident of unlawful sexual activity.  *See Robinson v. State*, 881 So. 2d 29, 30 (Fla. 1st DCA 2004); *State v. Dell'Orfano*, 651 So. 2d 1213, 1215–16 (Fla. 4th DCA 1995).  Mr. Jones could therefore be convicted for each distinct incident of prohibited sexual activity with H.R.

We now review the evidence and trial record "to see how many distinct criminal acts [Mr. Jones] committed."  *Woerner*, 709 F.3d at 539–40.  The state contends that there is no double jeopardy problem because the evidence presented at trial established "many" incidents of unlawful sexual activity.  We agree with this assessment of the evidence:  H.R.'s testimony at trial permitted the jury to find that she and Mr. Jones had sex at least five (and maybe six) times; in the recorded call that was introduced by the prosecution, Mr. Jones admitted to having had sex with H.R. on two occasions within the time period set forth in the information; and there was evidence that Mr. Jones was the father of H.R.'s child.  As we have said, "separate punishments for factually separate although statutorily identical crimes do not raise double jeopardy concerns, even where the same victim is involved." *Williams v. Singletary*, 78 F.3d 1510, 1514 n.1 (11th Cir. 1996).

19

The issue here, however, does not concern sufficiency of the evidence. The problem is that nothing in the record—not the information, not the jury instructions, not the prosecutor's closing argument, and not the jury's general verdict—identify *which two instances* the jury found Mr. Jones guilty of. The state did not answer this question in its brief and, most troubling, was unable to identify which two instances the jury found Mr. Jones guilty of when pressed several times at oral argument. *See* Rec. of Oral Argument at 25:52–29:59.

This uncertainty raises a significant double jeopardy concern. The Double Jeopardy Clause protects "against multiple punishments for the same offense" and "against a second prosecution for the same offense after conviction." *Pearce*, 395 U.S. at 717. *See also Green v. United States*, 355 U.S. 184, 187 (1957) ("The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."). These protections inherently require that everyone know which instances Mr. Jones was convicted of so that he can raise a double jeopardy bar to future prosecutions under § 794.05 for similar conduct. Yet here no one—including the state—knows (or can reasonably determine) what specific instances of sexual conduct Mr. Jones was convicted of. Any attempt to come up with an answer would be based on guesswork.

20

In this respect, the Sixth Circuit's decision in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), although decided on due process grounds, is instructive. There, the defendant was convicted of 40 counts of sexual abuse, including 20 "carbon copy" counts of child rape, "each of which was identically worded so that there was no differentiation among the charges," and 20 similarly identical counts of felonious sexual penetration. *See id.* at 628. The lone child victim testified that the undifferentiated offenses took place a number of times ("about 20" times, "about 15" times, "about 10" times) and described the typical abuse scenarios.

Even applying AEDPA deference, the Sixth Circuit vacated all but one of the defendant's multiple convictions for child rape and all but one of the multiple convictions for sexual penetration because "[d]ue process [ ] requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy." *Id.* at 634. The identically-worded counts, combined with the victim's testimony, posed two related problems: "First, there was insufficient specificity in the indictment or in the trial record to enable Valentine to plead convictions or acquittals as a bar to future prosecutions. Second, the undifferentiated counts introduced the very real possibility that Valentine would be subject to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense." *Id.* at 634–35.

21

The second double jeopardy problem identified in *Valentine* does not present the same danger here. As we have already explained, in this case—unlike the situation in *Valentine*—sufficient evidence establishes the two violations that were charged against Mr. Jones. But Mr. Jones' convictions do present the first double jeopardy problem. As in *Valentine*, "[w]e cannot be sure what double jeopardy would prohibit because we cannot be sure what factual incidents were presented and decided by this jury." 395 F.3d at 635. We are therefore convinced that, given the lack of any distinction presented in the information, the trial record, or the jury's verdict, Mr. Jones' multiple convictions for identically-worded counts spanning the same period of time create a double jeopardy problem.

The state urges us to ignore the vagueness in the information, the lack of precision in the trial record, and the lack of specificity in the verdict form because child victims are often unable to provide precise dates of abuse. We recognize this evidentiary concern, as have Florida courts. *See State v. Dell'Orfano*, 651 So. 2d 1213, 1214 (Fla. 2d DCA 1995). *See generally* Lindsay Wandrey et al., *Maltreated Children's Ability to Estimate Temporal Location and Numerosity of Placement Changes and Court Visits*, 18 Psychol. Pub. Pol'y & L. 79, 98–99 (2012) (summarizing scientific research establishing that "it may be unrealistic to assume that children will be able to provide temporal estimates of abuse"); Elaine R. Cacciola, *The Admissibility of Expert Testimony in Intrafamily Child Sexual Abuse*

22

*Cases*, 34 UCLA L. Rev. 175, 176 n.12 (1986) ("One significant problem with child witnesses is that they have difficulty testifying as to when an incident occurred."). The requirement of some differentiation between incidents, however, is not an "insuperable obstacle." *Currier v. Virginia*, 138 S. Ct. 2144, 2149 (2018). Confronted with the same argument in *Valentine*, the Sixth Circuit explained:

> The Constitution does, however, demand that if a defendant is going to be charged with multiple counts of the same crime, there must be some minimal differentiation between the counts at some point in the proceeding. Without such differentiation, these prosecutions would reduce to nothing the constitutional protections of the Fifth and Fourteenth Amendment.

*Valentine*, 395 F.3d at 638.

The record in this case reveals several ways in which Mr. Jones' right to be free from double jeopardy could have been protected, even without H.R. providing specific dates of the instances of sexual contact. First, the state could have chosen to rely on just two of the instances related by H.R., and told the jury in closing what those instances were. Had the prosecution done that, it likely would have been possible to reasonably conclude that those two instances were the ones supporting the convictions, and this would have allowed Mr. Jones to plead a double jeopardy bar if he were charged in the future of having had prohibited sexual contact with H.R. during the same period of time. *See United States v. Halliday*, 672 F.3d 462, 471 (7th Cir. 2012) (explaining, under plain error review of double jeopardy challenge to convictions for receipt and possession of child pornography, that

23

"[d]espite the deficiencies in the indictment, the prosecutor's statements and the evidence at trial showed that there were different download dates and therefore separate conduct"). Second, the state could have differentiated between counts based upon H.R.'s description of where they were committed, (e.g., "behind Walgreens" to identify the fourth instance), or an identifying feature about it (e.g., "the time the pair engaged unprotected sex" to identify the third instance). *See Hardy v. Beightler*, 538 F. App'x 624, 629 (6th Cir. 2013) (finding no double jeopardy problem despite identically-worded counts because "[o]n several occasions, the prosecution was careful to explain to the jury the differences between the identical rape counts and the identical kidnapping counts"); *Valentine*, 395 F.3d at 637 (explaining that differentiation could be established with reference to "certain locations or certain actions"); *State v. Generazio*, 691 So. 2d 609, 611 (Fla. 4th DCA 1997) (permitting differentiation among counts based on the type of sexual act committed). Third, and similarly, the jury could have been asked to identify which instances it found were proven for each count with a special verdict form. *Cf. Jones*, 601 F.3d at 1259 (finding no multiplicity problem where the "district court used a verdict form that required the jury to make special findings" about distinct instances of firearm possession).

## C

24

We now address whether, given the nature of the double jeopardy problem, habeas relief is warranted. In our view, the answer to that question is no.

Under *Brecht*, modified to fit the circumstances presented here, the question is whether the violation had (or is having) a "substantial and injurious effect or influence." 507 U.S. at 637–38. *See also O'Neal v. McAninich*, 513 U.S. 432, 445 (1995) (explaining that if a federal habeas court has "grave doubt" about the harmlessness of an error that affects substantial rights, it should grant relief). This standard applies even though the state post-conviction court did not address Mr. Jones' double jeopardy claim on the merits. *See Fry v. Pliler*, 551 U.S. 112, 121 (2007).

The vice created by the circumstances surrounding Mr. Jones' convictions is the potential inability of Mr. Jones to plead jeopardy in a future prosecution charging him with unlawful sexual contact with H.R. during the time frame specified in the information. But "where there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended." *United States v. Wilson*, 420 U.S. 332, 344 (1975). *See also Schiro v. Farley*, 510 U.S. 222, 230 (1994) (similar concept). At this time there is no such successive prosecution. And, critically, the statute of limitations for any violations of § 794.05 that Mr. Jones may have committed with respect to H.R. in 2005 and 2006 has long since run. *See* Fla. Stat. §§ 775.15(2)(a)–(b) & 775.15(13)(a). *See also Hemphill v. State*, 820 So. 2d

25

405, 406 (Fla. 2d DCA 2006) (describing statute of limitations principles for certain sexual offenses around the time of Mr. Jones' conduct).  So, as we see things, the double jeopardy problem that could have arisen from the way Mr. Jones was charged, tried, and convicted—his inability to plead jeopardy in future prosecutions for the multiple violations of § 794.05 with H.R.—has not and will not arise.  It is simply too late for Florida to charge Mr. Jones with any other instances of unlawful sexual contact with H.R. in 2005 and 2006.

The prohibition against double jeopardy does not "exist[ ] to provide unjustified windfalls." *Jones v. Thomas*, 491 U.S. 376, 387 (1989).  As we stated earlier, there was sufficient evidence that Mr. Jones had unlawful sexual contact with H.R. on at least two occasions during the time period set forth in the information.  And those two convictions, in and of themselves, do not violate the Double Jeopardy Clause.  *See Williams*, 78 F.3d at 1514 n.1.  If we were to set aside one of the two convictions now, *see Valentine*, 395 F.3d at 638–39, we would be providing Mr. Jones with a windfall.[2]

**IV**

---

[2] Should the state inexplicably seek to charge Mr. Jones again with unlawful sexual contact with H.R. during the time frame specified in the  information, Mr. Jones can of course assert that the statute of limitations has run.  If that defense is somehow rejected, Mr. Jones will be able to plead jeopardy and point to the problems we have identified in this opinion.  At that point, a court would have to determine a remedy for Mr. Jones. *See United States v. Tovar-Rico*, 61 F.3d 1529, 1532 (11th Cir. 1995); *United States v. Suarez*, 617 F. App'x 537, 545 (6th Cir. 2015).

26

The district court's denial of habeas relief with respect to Mr. Jones' double jeopardy claim is affirmed.

**AFFIRMED.**